# Wytheville

EUNICE M. CORSON v. MAURICE S. CORSON, JR.

June 15, 1933.

Present, All the Justices.

The opinion states the case.

*Robert Thomas* and *Joe T. Mizell, Jr.,* for the appellant.

*Lovenstein & Lovenstein,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

This is a suit instituted by the husband, Maurice S. Corson, Jr., alleging that his wife, Eunice M. Corson, had, without just cause, deserted him. Two decrees were entered by

the chancellor, one on October 7, 1931, in which the husband was granted a divorce *a mensa* and given the custody of the only child, a girl three years of age, and by which the marital rights of each in the property of the other were extinguished. By the second decree, entered January 5, 1932, the divorce *a mensa* was made absolute, and the care, custody and control of the infant daughter were given permanently to the husband and father; the case was ordered stricken from the docket and the papers filed with ended causes. From both decrees an appeal was allowed Eunice M. Corson.

There are five errors assigned; those numbered 3, 4 and 5 do not involve the merits of the case, nor does the record, as certified, contain any order or decree dealing with the matters set forth therein.

Assignment of error No. 3 is stated thus: "The court erred in refusing to require the said Maurice S. Corson, Jr., to pay to petitioner reasonable and just counsel fees and suit money and alimony, all of which was necessary to enable petitioner to properly present her case and defend herself in this action." The only reference in the record to this subject is found in the last paragraph of the appellee's answer, where she prays that the bill be dismissed "and that she be given her proper court costs, expenses and attorney's fees in this behalf expended."

In obedience to an order of this court entered on March 8, 1933, the clerk, with the other papers, transmitted an original draft of a decree dated February 17, 1932, signed by the trial judge, reading thus:

"This cause came on again to be heard on motion of the defendant, after due notice to the plaintiff, that the decree heretofore entered granting a divorce from bed and board and awarding him the custody (of) their infant child, be set aside, which said motion the court doth hereby overrule. Whereupon the defendant pursuant to notice duly given further moved the court to enter an order suspending the operation of the aforesaid decree and to prohibit

the further taking of depositions by the plaintiff to merge the same into an absolute decree of divorce, and that she be allowed reasonable attorney's fees, suit money, and temporary support for herself and child enabling her to appeal to the Supreme Court of Appeals of Virginia from the aforesaid decree, all of which relief the court doth hereby refuse."   .

(Signed)   JULIEN GUNN.

The very able and experienced clerk of the Circuit Court of Henrico county in explanation of why the above decree was not included in the record as originally certified by him has this to say:

"It is proper to state that on the 17th day of February, 1932, the original papers were withdrawn from the office by counsel for the defendant, and when the return of the papers was requested, they could not be found, having been mislaid.   Sometime afterwards they were returned to the office, but no statement was made that any subsequent decree had been entered in the case.   In examining the papers long after February 17, 1932, I found folded with them a decree of that date.   It has not been transcribed on the order book."

Chapter 458, section 3, of the Acts of 1926 (1930 Code, section 5962-a) in part, reads thus:

"All judgments or decrees entered during any term of the court shall become final at the end of the term or at the expiration of fifteen days after their rendition, whichever period shall first happen."

■  By this assignment of error we are asked to reverse the chancellor because he refused affirmative relief after he had lost jurisdiction of the cause.   The refusal of relief, under such circumstances, does not constitute reversible error.

■  In assignment of error No. 4 it is claimed that the decrees deciding the merits of the case were entered by the trial court without giving opposing counsel notice or

an opportunity to present their objections to the court. Again there is nothing in the record to support the statement; counsel neither filed a petition in the cause nor had a motion to vacate the decree made a matter of record. Charges of unethical conduct on the part of opposing counsel were made in the brief in this case. Unfortunately, the record is silent as to whether or not these charges were brought to the attention of the trial court. In the absence of definite evidence showing who was at fault, we will content ourselves with saying that sharp practice whereby one counsel seeks and obtains an unfair advantage *should* not be tolerated in the lower court and *will* not be tolerated in this court.

The fifth assignment of error states that it is based on the action of the trial court in refusing to sustain a motion to dismiss the case after a hearing on the bill and depositions taken to support it. The record contains no decree sustaining or overruling such a motion.

The questions raised by the first and second assignments of error are: (1) Whether the evidence for complainant is sufficient to prove desertion of the husband by the wife. (2) Whether the husband or the wife should be given the care and custody of the child. These two questions will be discussed together.

It seems that Eunice Mills, a native of Spotsylvania county, seventeen years of age, obtained employment in Richmond and took up her residence in that city. Shortly thereafter she met Maurice Corson, then about nineteen years of age, and after a very brief courtship they became engaged. The young couple, accompanied by the parents of the husband, motored to Washington, D. C., and there on either the 17th or 19th day of September, 1927, were married. The parties returned to Richmond and boarded for awhile and then began housekeeping. Both the husband and the wife continued in gainful employment for about two months, when the husband lost his job, since which time he has not been regularly employed, though he

has worked at different jobs, varying in length from a week to perhaps two months at a time. When cross-examined on the subject he was unable or unwilling to state just how long he was employed at the different undertakings. He has no trade or special talent and hence when working only earned from $1.50 per day to $15.00 per week. Just how much, if anything, he contributed towards furnishing the two rooms and kitchen in the apartment in which they lived is not disclosed. It seems that the wife bought most of the furniture and paid for it out of her own funds and while her husband was out of employment spent her earnings in the support of both.

The wife continued in gainful employment until she was forced to quit on account of pregnancy. The wife unable to work, the husband unemployed, neither owning any income bearing property, both young, neither schooled in meeting difficult problems—the situation was tragical, it is not surprising that their marital bark foundered upon the rocks of adversity. The situation required courage, confidence in each other and strenuous efforts on the part of the husband to increase his earnings so that he might give his wife and unborn child the necessities which their condition demanded. Instead of facing the situation courageously, the husband began to take most of his meals with his parents and moved his clothing from their tiny apartment to his parents' home. The wife, whose days had previously been fully occupied with her employment, was at home alone, the larder almost, if not entirely, empty. It is no wonder that she became panic-stricken and fearful of the future.

The evidence tending to show what transpired between the parties immediately prior to the separation is in conflict. The husband testified on direct-examination that one day in August, 1928, when he returned home from work his wife was gone, that he attempted to find her and could not, and that within a day or two thereafter he was arrested on a warrant sworn out by his wife for non-support. On

cross-examination he testified that he was not working that day but was looking for work. He stated that he had spent his earnings in furnishing his wife with the necessities and that his parents had helped him when he was not at work. The testimony of his parents tends to support him in this regard, but it is very indefinite in showing in just what way or how much they contributed towards the support of the wife.

The wife testified that on the day she left the apartment her husband told her that neither she nor the coming baby was wanted in Richmond, and asked why she did not go to the country; that shortly after this conversation she went to the Juvenile and Domestic Relations Court of Richmond and had a warrant issued against her husband for non-support; that after issuing the warrant she did not care to return to the apartment and spent the night with a friend; that next day there was an informal hearing before the judge of that court and that on learning that neither she nor her husband had consulted a physician or made any preparation for the coming baby he advised her to go back to her parents and required her husband to pay her $100 for the necessary nursing and medical attention during her confinement. Following this decision, the wife returned to her parents in Spotsylvania.

Between September 10 and November 3, 1928, the $100 was paid in installments to the Juvenile and Domestic Relations Court by the husband for the wife. The child was born on September 26, 1928. Eight days thereafter the husband, with his mother, drove from Richmond to Spotsylvania to see the wife and child. He testified that on this occasion he asked his wife to return to him, which she refused to do. Shortly thereafter, i. e., on October 10, 1928, the same day that he made a payment of $25 to the Juvenile and Domestic Relations Court, he wrote a letter to his wife, retaining a copy, which he sent by registered mail, in which he said: "Eunice I would like to know what you intend to do as I want to get some rooms and go house-

keeping if you intend to come back." The wife answered this letter in kind and reiterated some of the causes which she claimed led to the separation.

Whatever may have been the immediate cause of the wife leaving the apartment and causing the warrant to be issued against her husband, neither the offer of reconciliation made a few days after the birth of the child nor the letter written under such circumstances constitues a *bona fide* effort on the part of the husband to effect a reconciliation. According to his own testimony, he had made no preparation for the proper care of his wife during her confinement, and it was only when he was compelled so to do by order of the Juvenile and Domestic Relations Court that he furnished her any money therefor. After receiving a reply to his registered letter, he never saw his wife or child or attempted to communicate with her in any way until October 25, 1929, when he was again arrested on a warrant issued on his wife's complaint before the Juvenile and Domestic Relations Court of Spotsylvania. From an adverse judgment the husband appealed to the Circuit Court of Spotsylvania, where on December 4, 1929, a jury found him guilty of non-support and fixed his punishment at a fine of $250. On his motion to set aside this verdict the case was continued. What final disposition was made of the motion does not appear from the record. It is stated in the briefs that this judgment was modified and the defendant was ordered to pay $15 per month for the support of his child, which it seems he had continued to do up to the time of the institution of this suit.

The husband introduced as a witness in his behalf a Richmond attorney, who represented him in the two proceedings in the courts of Spotsylvania, who testified that on each of his two trips to Spotsylvania he heard the wife say that she had promised her husband to come back to him in Richmond if he would come for her, and that her husband went for her, with his mother, and she refused to return. Both the husband and his mother testified that they

only made one trip to Spotsylvania to see the wife and that was shortly after the baby was born, which the wife testified was only eight days.

There has been no *bona fide* effort on the part of the husband to become reconciled to his wife, and, by his own testimony, he has never been in a financial position to support her and the child if she had returned to him.

Not only that, the evidence shows conclusively (1) that the husband never desired the baby and that he tried to get his wife to undergo an operation for abortion to get rid of the child before it was born. (2) He made no preparation for it until he was compelled to do so by the judgment of a court of competent jurisdiction. (3) He never saw the child but once after it was born, and then for only a few minutes. (4) He has never voluntarily contributed anything for the support of the child; he has never given it a stitch of clothing, a mouthful of food, or even a rattle. There is not a scintilla of evidence in the record to show that the mother is not a proper person to have the care, custody and control of the infant.

The evidence of the husband and his witnesses tending to show desertion is very indefinite and unsatisfactory. The evidence of the wife tends to show that at the time she left her husband their situation was desperate and if she had not taken some steps to provide for herself and her unborn child their health, and perhaps their lives would have been in serious jeopardy. The subsequent attitude and acts of the husband are conclusive of the fact that she was justified in what she did.

The answer filed by the wife asks for no affirmative relief except court costs, expenses and attorney's fee. It affirmatively appears in the record that the husband has been paying $15 per month for support of the infant; and that he, through no apparent fault of his own, is able to obtain employment only occasionally. When employed his earnings are very meager. The wife is living with her parents who

contribute to her support. A decree for an attorney's fee, under these circumstances, would have been futile.

For the reasons stated, both the decree *a mensa* and the decree *a vinculo* will be reversed, the care, custody and control of the infant awarded the wife and mother, and the case dismissed.

*Reversed.*